VENCILL, APPELLEE, *v.* CORNWELL ET AL., APPELLANTS.

218

(No. 5428—Decided December 7, 1956.)

*Messrs. Smith, Clark & Holzapfel* and *Mr. John R. Welch,* for appellee.

*Messrs. Wright, Harlor, Purpus, Morris & Arnold* and *Mr. Rudolph Janata, Jr.,* for appellants.

FESS, J. This is an appeal on questions of law from a judgment rendered on a verdict for plaintiff in the sum of $5,000. By reason of failure to obtain service on William Cornwell, the case proceeded only against the defendant Goodwill Industries (herein referred to as the defendant). The principal question presented for decision involves *respondeat superior.*

William Cornwell, who drove defendant's truck, which collided with plaintiff's automobile, was employed as a truck driver's helper—not as a truck driver. In response to a subpoena, defendant produced at the trial an office record containing a resume of various details concerning the employment of William Cornwell. The collision occurred on December 24, 1951. This exhibit contained a notation that on December 14th Cornwell was asked whether he would like to become a driver. It contained also a notation under date of November 20, 1953: "We called the insurance company and gave them Bill's address (the accident involved Bill sliding on the ice and the truck hitting a parked car). Later the driver of the car decided he had a back injury and sued Travelers Insurance. Travelers has been hunting Bill so he can testify." The exhibit was a record of the company made in the usual course of operation of its business. This exhibit was admitted over objection of the defendant. The objection, however, was general and the court was not apprised at the time of its admission that it contained a notation made two years after the accident and that it made reference to Travelers Insurance Company. Had objection been properly made and the court's attention directed to the in-

competent evidence, it would have been the duty of the court to order deletion or obliteration of the offensive matter. But where evidence consists of several items, part admissible and part objectionable, and an objection is interposed generally, without pointing out the particular item which is objectionable, it is not prejudicial error to overrule the objection and admit the evidence as a whole. *Timberman* v. *State,* 107 Ohio St., 261, 140 N. E., 753; *State* v. *Fox,* 133 Ohio St., 154, 12 N. E. (2d), 413; *Carson* v. *Metropolitan Life Ins. Co.,* 156 Ohio St., 104, 111, 100 N. E. (2d), 197. Cf. *Breinig* v. *State,* 124 Ohio St., 39, 45, 176 N. E., 674; *Wehrle* v. *General Motors Corp.,* 51 Ohio Law Abs., 220, 80 N. E. (2d), 702.

It is elemental that in order to recover against a master for injury due to a servant's wrongful act in the course of his employment, the plaintiff must prove not only the relationship of master and servant but also that the servant was acting at the time and place within the scope of his employment. Under the doctrine of *respondeat superior*, the burden is on the plaintiff to adduce evidence tending to show that the servant was acting within the scope of his employment and that the right to control the servant's conduct was in the master. *Clark* v. *Fry,* 8 Ohio St., 358, 72 Am. Dec., 590; *Lima Ry. Co.* v. *Little,* 67 Ohio St., 91, 65 N. E., 861; *Senn, Admx.,* v. *Lackner,* 157 Ohio St., 206, 105 N. E. (2d), 49.

The evidence is conclusive that Cornwell was in the employ of the defendant as a truck driver's helper,[1] and was engaged in the defendant's business at the time of the collision; that prior to the collision Cornwell and the regularly assigned truck driver were engaged in their assigned duties calling on patrons of the defendant, picking up merchanise. In his application for employment, Cornwell sought employment as a truck driver or helper. He did not have a driver's license. The evidence fails to disclose the nature of the duties of a truck driver's helper, but by reason of the fact he had no driver's license, the reasonable inference to be drawn is that his duties did not in-

---

[1]Defendant's record of wages paid made during the year 1953 contains a notation that Cornwell worked as a driver in 1951 and 1952. Subsequent to 1951 he was employed as a truck driver, but there is no doubt that he was only employed as a truck driver's helper on December 24, 1951.

clude driving the truck. From Cornwell's employment record, it appears that he was asked whether he would like to become a driver. His answer was in the affirmative, and he was told to secure a temporary permit. He had a temporary permit to drive at the time of the collision. The Director of Public Relations of the defendant, who responded to subpoena, testified that Cornwell started steady, on June 29, 1951, as a helper, and there was no change in his employment up to the time of the collision; that the records did not show the kind of a helper; that it could have been helper in the stockroom, in the furniture shop or otherwise; that he could have been a helper on the truck; that he was regarded as trainee driver on December 24, 1951; that if he was a trainee driver, he would have to be under supervision. The witness did not know whether Cornwell would be authorized to drive as a trainee driver, but admitted that he would have to do some driving as a trainee driver "with the supervision of the man who was sitting beside him."

Cornwell testified that on the day in question the truck driver was his supervisor, and that he asked the truck driver to permit him to take over the driving. He denied that he was a trainee driver at the time, "I was just on my own," and that he had driven the truck on several previous occasions with the permission of the driver who was always present when he drove. Cornwell testified also that during the time he worked as a helper, he received his orders from the drivers.

From this evidence, we conclude that reasonable minds could well differ upon the inferences to be drawn therefrom, whether Cornwell was acting within the scope of his employment at the time and place of the collision.

Plaintiff testified that prior to the collision there had been another traffic accident resulting in the stopping of a line of cars in front of him; that he had completely stopped at the end of this line of cars for an interval of time when defendant's truck crashed into the rear of plaintiff's automobile. Cornwell testified that plaintiff's automobile made a sudden stop directly in front of him without signal or other warning.[2] Upon request

---

[2] The answer admitted that the vehicle operated by plaintiff was standing in Sullivant Avenue facing eastward.

of defendant, the court gave two special instructions in writing as follows:

"No. 1. I charge you members of the jury, that if you find that plaintiff's act of stopping his car was sudden and voluntary and not dictated by the presence of obstructions ahead of him in his path of travel nor by any emergency situation, that it was then the duty of the plaintiff before so stopping the car he was driving to exercise due care to ascertain that such movement could be made with reasonable safety to other users of the highway and it was his duty to give an appropriate signal of his intention to stop, and if you find that he failed to exercise such care or to give such signal, he would be guilty of negligence, and if you find that plaintiff was thus negligent and that such negligence contributed directly and proximately in the slightest degree to cause the collision and plaintiff's claimed injuries, plaintiff is not entitled to recover and your verdict must be for the defendant.

"No. 2. I charge you, members of the jury, that if you find that Mr. Vencill was negligent in any respect and that such negligence directly contributed in the slightest degree to the collision, then Mr. Vencill is not entitled to recover in this action."

In his general charge, the court made no further reference to the provisions of Sections 4511.39 and 4511.40, Revised Code, or to contributory negligence. In the concluding paragraph of his discussion of negligence, the court said:

"Now, you will take all of these instructions that I have outlined to you on the four specifications of negligence, and determine from the facts and circumstances in evidence whether or not the defendant company was negligent in any of the respects set forth, and, if so, whether that negligence was the direct and proximate cause of the injury or damage of which plaintiff complains, and if so, of course, your verdict should be for the plaintiff. If not, it should be for the defendant."

Toward the end of the charge, the court said also:

"The special charges as to the law which I gave you before arguments of counsel will also accompany you to your jury room, and you will consider those along with the general charge as to the law which I am now giving you since the arguments of counsel, as being the law in the case."

At the conclusion of the general charge, defendant's requests to charge with respect to the provisions of Sections 4511.39 and 4511.40, Revised Code, and also on contributory negligence, were refused. It is to be noted that these subjects were dealt with in the special instructions given at defendant's request.

Some Common Pleas Courts repeat verbatim in the general charge special charges previously given. Other courts merely incorporate by reference special charges in the general charge. Care must be exercised in the general charge not to contradict the special charge. We are of the opinion that once a special charge is given no prejudicial error is committed in failing to repeat such special charge in the general charge. Cf. *Telinde* v. *Ohio Traction Co.,* 109 Ohio St., 125, 127-128, 141 N. E., 673. The failure to repeat a special charge is not of such a "pernicious, misleading and confusing character as to warrant the setting aside" of a verdict, if the charge as a whole (including the special charge) fairly apprises the jury of the law applicable to the issues of the case. *Centrello, a Minor,* v. *Basky,* 164 Ohio St., 41, 128 N. E. (2d), 80. To repeat the special charge as a postargument charge, would add undue emphasis to the issue. Furthermore, the special charge goes to the jury, so that it cannot be said that it was misled by the failure of the court to repeat it in its general charge, or that the jury might infer that the charge was withdrawn.

But the summary of the court on negligence (quoted above) should have included the exception "unless you find that plaintiff himself was guilty of negligence proximately contributing to his injury." Contributory negligence was an issue in the case and the court told the jury that plaintiff could recover if it found defendant's negligence proximately caused plaintiff's injury. Therefore, the court committed error prejudicial to the defendant in charging that the plaintiff could recover regardless of contributory negligence on his part.

The judgment is reversed and the cause remanded to the Common Pleas Court for a new trial.

*Judgment reversed.*

DEEDS and HUNSICKER, JJ., concur.

Fess and Deeds, JJ., of the Sixth Appellate District, and Hunsicker, J., of the Ninth Appellate District, sitting by designation in the Second Appellate District.