EAKINS ET AL., APPELLANTS, *v.* NASH, APPELLEE.

(No. 1540—Decided February 20, 1963.)

*Messrs. Sieman & Sieman,* for appellant.
*Messrs. Guarnieri & Secrest,* for appellee.

FRANCE, J. This case is an appeal on questions of law from judgments rendered on jury verdicts for defendant.

The basic facts are comparatively simple and involve a motor vehicle rear-end collision. Plaintiff, driving her own vehicle with no passengers, had stopped at a traffic light at Market Street and Park Avenue in Warren; defendant, also with no passengers, stopped behind her. Plaintiff, making a right turn at the intersection to defendant's knowledge, started at the light, committed herself to the right turn and as she approached the crosswalk on the intersecting street, stopped to avoid hitting a pedestrian who stepped into the crosswalk in front of her. Defendant, proceeding behind her, failed to stop in time and the two cars collided, bending defendant's right front fender and leaving little, if any, visible damage to plaintiff's car.

Plaintiff's amended petition claimed whiplash, concussion, sprains, nervous shock, lost earnings, and $92 damage to her automobile, to the total extent of $25,000. Her husband's petition claimed for medical bills and loss of consortium in an undisclosed amount. Defenses of general denial and contributory negligence were interposed in each case, with denial of contributory negligence in the replies. The two cases were consolidated for trial.

Eleven errors are assigned, only five of which do we find it necessary to discuss in detail.

The third assignment charges error in instructing the jury to disregard testimony that defendant admitted fault for the accident. The testimony in question was that of defendant on cross-examination, as follows:

"Q. Did you say anything to Mrs. Eakin after the accident? A. Well I asked her if she was O. K.

"Q. I don't mean that, I mean with reference to how the accident happened? A. You mean whose fault it was?

"Q. Yes. A. Yes it was my fault.

"Q. And you said so to her didn't you? A. Yes I did."

This particular testimony, neither objected to nor made the ground of motion at the time was, on the next day of trial, ordered stricken and disregarded by the jury, apparently on

the theory that it was incompetent because it was an opinion or conclusion on the ultimate fact in issue.

While admittedly the declarations, or even the sworn testimony, of third parties on the ultimate issue of fact are improper, there is no question that such admissions, when made by a party, are freely admissible. *Freas* v. *Sullivan,* 130 Ohio St., 486; *Abbott, Admx.,* v. *Cocke* (Ninth Appellate District), 29 Ohio Law Abs., 504. The theory of admissibility is that it is inconsistent with later denial of the claim. See cases in 118 A. L. R., 1230. And this is true, even where the party making the admission of responsibility was not present at the occurrence and in possession, at first hand, of the factual basis for making the statement. See cases in 54 A. L. R. (2d), 1073.

Even, however, if the statement could be found objectionable, it should be noted that it was not objected to at the time. It, therefore, was "in the milk," and while the trial court might have been justified in instructing the jury as to the weight to be attached to it there was no warrant for ordering it stricken. This was prejudicial error and the third assignment of error is sustained.

The fourth assignment relates to the judge's charge relating to sudden emergency, in which he stated, after charging on assured clear distance:

"With respect to this particular statute: I must call your attention to the provision respecting what is referred to as an 'emergency.' The rule requiring the driver of a motor vehicle to be able to stop the same within the assured clear distance ahead, has no application in the case of an emergency creating an unexpected hazard. If the driver of a motor vehicle proceeding on the highway over which she has a right to proceed, and while driving at a speed that is reasonable and proper, is suddenly, and without warning faced with the stopping of a vehicle immediately preceding her, and at a distance therefrom so close when the sudden stopping occurs that in the exercise of ordinary care the driver is unable to bring her vehicle to a stop, and such sudden stopping of such preceding vehicle occurs without the fault of the driver of the following vehicle, the question is then presented whether or not the driver of the following vehicle is guilty of negligence in the operation of her motor vehicle."

Under the factual situation shown plaintiff was making a normal start from a stopped position at a traffic light; so was defendant. Plaintiff was making a right turn; defendant knew it. The defendant had observed pedestrians at the corner. In the absence of a "don't walk" pedestrian light, as to which there was no evidence in the record, it was normal to expect that at any time a pedestrian would step into the crosswalk—as one did. Plaintiff was obligated by law to yield to him. Defendant was bound to expect that such a situation as presented itself was reasonably likely to happen. Just what there was unexpected in the situation, or what became an emergency, sudden or otherwise, eludes us.

Even so, however, the emergency created must not be of the defendant's own making. She was obligated by the assured-clear-distance law to be driving at a speed that would enable her to stop within the assured clear distance ahead. This applied with respect to plaintiff's car as a discernible object. *Bickel* v. *American Can Co.*, 154 Ohio St., 380. Obviously she did not so stop. There was nothing shown which made this compliance impossible. *Bush, Admr.*, v. *Harvey Transfer Co.*, 146 Ohio St., 657, 664. She merely sought to excuse her compliance with a safety regulation when the very event which the safety statute is designed to guard against occurred.

Charging on sudden emergency intruded a spurious issue into the lawsuit and was prejudicial error. Assignment number four is sustained.

The fifth assignment of error relates to the defense of contributory negligence, which was pleaded.

The court charged the jury that plaintiff was obligated by law not to stop or suddenly decrease the speed of her vehicle without first giving an appropriate signal to traffic immediately to the rear and stated that this was a positive requirement, failure to perform which would be negligence. This was undoubtedly a good abstract statement of the law, if applicable to the fact situation then existing.

Unfortunately, the fact situation was not such as to give rise to it. As we have noted this was a case involving relatively slowly moving traffic and turning traffic at an intersection with pedestrians present. The positive obligation to stop in order to yield to pedestrians was present and known to both parties. In

such a situation, unlike that involved on the open highway or sudden stopping in mid-block to back into a parallel parking space, the likelihood of such stops is always present. We do not feel that under such circumstances plaintiff's stop required advance warning other than that to be provided by brake lights. Certainly any hand signal, in the then position of the cars, would be unavailing because it could not be seen by defendant. The defendant's own testimony indicates that the plaintiff's brake lights went on and that she saw them. Under the circumstances, there was no legitimate dispute as to the giving of proper signal sufficiently in advance of cessation of plaintiff's movement to give notice to defendant had she been observing the assured clear distance and tail-gating laws (Sections 4511.21 and 4511.34, Revised Code). Since failure to signal was the only matter relied upon, there was no evidence to support this issue, and it was improper to direct a charge on it.

In this connection the court also charged on the obligation imposed upon plaintiff to signal her turn in advance "to give ample warning to other users of the highway affected by such movement." Whether the signal was in fact given is in dispute, but it is undisputed that defendant knew *before* the event that plaintiff was going to turn right. Since the purpose of the signal had been served and defendant was on notice, there could be no causal relationship, however remote, between failure to signal, if any, and the accident.

The fifth assignment of error is sustained.

The final assignment which we feel obligated to discuss is that of admitting certain testimony of the plaintiff on cross-examination as to statements made to her by an unidentified policeman. This testimony was to the effect that two policemen came to the accident scene at plaintiff's request; that they did not make an official report; and that they said it was because there wasn't enough damage to either car to warrant it. The testimony as to this conversation was admitted over objection. Obviously it was hearsay and since it was that of an unidentified third party it qualified under none of the exceptions to the hearsay rule. In addition it was an opinion or conclusion as to value by one whose competence was completely untested. That it was intended to and did persuade the jury that damages to plaintiff's car were overstated is undoubted.

This was prejudicial error and the eighth assignment is sustained.

Of the remaining assignments of error, number two, dealing with failure of the trial court to direct a verdict for plaintiffs, has some merit, since, as we have indicated, there was scarcely a scintilla of evidence on contributory negligence. But the state of the evidence as to ownership of plaintiff's car scarcely justified directing the jury to consider it as an item of damages.

Finding that there is prejudicial error affecting the claims of both liability and damages which require a retrial, we do not specifically pass on matters of the weight of the evidence, and of passion and prejudice.

The judgment of the Court of Common Pleas is reversed and the cause is remanded for new trial.

*Judgment reversed.*

BROWN, P. J., and DONAHUE, J., concur.